[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
—————————————

No. 94-2430
—————————————

D. C. Docket No. 93-05038/LAC

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/25/98
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILLIP MOUNT,

Defendant-Appellant.

—————————————

Appeal from the United States District Court
for the Northern District of Florida

—————————————
**(November 25, 1998)**

Before TJOFLAT, COX and HULL, Circuit Judges.

COX, Circuit Judge:

Phillip Mount appeals following his conviction on conspiracy, drug, and firearm charges. We affirm in part and reverse in part.

## I. Background

The Jackson County Sheriff's Office, the Drug Enforcement Agency, and the Bureau of Alcohol, Tobacco & Firearms initiated a joint investigation in Jackson County, Florida targeting suspected "crack" cocaine sales. During mid-to-late 1993, these agencies used confidential informants to make controlled purchases of cocaine from various individuals in the area. The evidence from their investigation revealed that Phillip Mount was at the center of a cocaine distribution network.

In the early morning hours of November 21, 1993, police officers executed a search warrant for Mount's residence. At the time, Mount and a female companion were the only occupants of the house. During their search, the police found a small hidden compartment under the stairwell to the second floor. This compartment contained approximately 1.3 kilograms of powder cocaine, a small amount of "crack" cocaine, rubber gloves, some plastic bags, and an unloaded .357 Smith & Wesson firearm in a holster. The police did not discover any ammunition for the .357 firearm in the compartment or elsewhere in the house.

Mount and seven codefendants were charged in a twenty-two-count indictment. Count I of the indictment charged Mount with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846; Count II charged him with using and carrying a firearm during and in relation to a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c); Count XVII charged him with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841; and Count

XVIII charged him with using and carrying a .357 magnum firearm during and in relation to his possession with intent to distribute offense, in violation of 18 U.S.C. § 924(c).

At the jury trial that followed, the Government offered evidence about the discovery of the .357 magnum in the hidden compartment and evidence that Mount had distributed drugs from the house.[1] Special Agent Hersey, who had been present and assisted in the search of Mount's residence, also testified that after the search he spoke to Mount about the hidden compartment. According to Hersey, Mount admitted that the .357 magnum was his gun and argued that there was no law against having a gun in the house. (R-11 at 1173.) Hersey also testified that it was his understanding that Mount had purchased the gun from a pawnshop. (*Id.*) No other mention of the .357 was made during the trial.

The district court instructed the jury on the § 924(c) counts as follows:

> A Defendant can be found guilty of this offense only if all the following facts are proved beyond a reasonable doubt:
>
> First: That the defendant is guilty of conspiracy to possess cocaine base with intent to distribute it, or possession of cocaine base with intent to distribute it, as charged in the indictment.
>
> Second: That the defendant knowingly used a firearm in relation to the commission of those drug trafficking crimes.
> . . . .
> In order for the government to sustain its burden of proof that the defendant *used* a firearm, it is not necessary for it to establish that the weapon was fired. It is sufficient if the proof establishes that the firearm furthered the commission of the drug trafficking crime or was an integral part of the underlying drug trafficking crime being committed.

---

[1] The Government contends in its brief that the evidence showed that Mount had engaged in drug transactions "at or around" this secret compartment, but the brief fails to provide any citation to the record in support of this assertion.

3

Also, in order for the government to sustain its burden of proof that the defendant *carried* a firearm, the government need not show that the defendant actually carried the firearm on his person. It is sufficient if you find that he transported or conveyed the weapon, or had possession of it in the sense that at a given time he had both the power and intention to exercise dominion or control over it. The mere presence of firearms, however, does not constitute the use of firearms within the meaning of 18 U.S.C. § 924(c).

(R-2-177(emphasis added).) Mount did not object to this charge. The jury found Mount not guilty on the charge of using or carrying a firearm during and in relation to a drug conspiracy, but convicted him on the conspiracy count, the substantive drug possession count, and the firearm count related to the substantive drug possession with intent to distribute count. The district court denied a motion for a new trial and sentenced Mount to 420 months of incarceration. Due to his agreement to cooperate with the government, Mount's sentence was later reduced on a Rule 35 motion to 180 months.

## II. Discussion

In this appeal, Mount challenges his convictions on a number of grounds. Only one warrants discussion: his contention that the evidence was insufficient to convict him for using or carrying a firearm under § 924(c).[2] Mount argues that there was no evidence that he used or carried the firearm at any time. He contends that the evidence shows only that he owned the firearm found

---

[2] Mount also argues: (1) that the district court erred when it failed to conduct an inquiry into his argument that the jury venire did not contain an adequate cross section of the community; (2) that he was deprived of his Sixth Amendment right to effective assistance of counsel because his trial counsel made statements conceding his guilt on some of the charges during closing arguments; (3) that the district court erred in failing to declare a mistrial due to inappropriate prosecutorial comments; and (4) that the evidence was insufficient to convict him of possession with intent to distribute cocaine. Under this circuit's precedent, the Sixth Amendment ineffective-assistance claim should be presented to the district court in a 28 U.S.C. § 2255 motion. *See, e.g., United States v. Griffin*, 699 F.2d 1102, 1107-08 (11th Cir. 1983). As a result, we will not consider that argument on direct appeal. The other arguments are meritless and do not warrant discussion. See 11th Cir. R. 36-1.

4

in his home. Citing *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501 (1995), he argues that such a finding is not a sufficient basis to support a § 924(c) conviction. The Government argues that the conviction may be upheld under the "carry" prong of § 924(c) because Mount owned the firearm, he lived in the house, and the .357 magnum was found in close proximity to the cocaine and in the house where Mount engaged in drug distribution. The Government asserts that, as a result, Mount constructively possessed the gun and kept it in a location where it would have been within easy reach when he engaged in his drug transactions.

Although Mount's argument is framed exclusively in sufficiency-of-the-evidence terms, his citation to *Bailey* implies that he is also challenging the correctness of the district court's pre-*Bailey* instruction to the jury. The statute under which Mount was convicted provides that "[w]hoever, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such . . . crime, be sentenced to imprisonment for five years . . . ." 18 U.S.C. § 924(c)(1). After Mount's trial in this case, the Supreme Court implicitly overruled this circuit's precedent defining "use" broadly and held that in order to constitute "use" under this statute, there has to be some active employment of the firearm. *Bailey*, 516 U.S. at 144, 116 S. Ct. at 506. The Court stated that this active employment could take the form of such conduct as "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire" the firearm. *See id*. at 148, 116 S. Ct. at 508. After *Bailey*, it is clear that the mere possession or storage of a firearm in a closet or near drugs is insufficient to satisfy the "use" element of § 924(c). *Id*. at 143-150, 116 S. Ct. at 506-509; *United States v. Jones*, 74 F.3d 275 (11th Cir. 1996); *United States v. King*, 73 F.3d 1564, 1567 (11th Cir.), *cert. denied*, — U.S. —, 117 S. Ct. 220 (1996).

5

The district court initially instructed the jury only on the "use" element of § 924(c) and not on the "carry" element. In its instruction regarding "use," however, it also included part of the definition of "carry" when it told the jury that it "is sufficient if you find that he transported or conveyed the weapon, or had possession of it in the sense that at a given time he had both the power and intention to exercise dominion or control over it." (R-2-177.) Under this instruction, the jury could convict under § 924(c) if it found either that: (1) the defendant had possession of the gun and the intent and power to exercise control over it, or (2) the defendant actually moved or transported it. In light of *Bailey*, it is clear that the district court's jury instruction on "use" is erroneous. Furthermore, the Government has conceded that there is insufficient evidence in the record to sustain a conviction for "use" of the firearm as "use" is currently defined by the Supreme Court.

Only if the evidence is sufficient for a properly instructed jury to have convicted Mount of *"carrying"* a firearm, however, do we have to determine whether the district court's erroneous jury instruction constituted plain error requiring reversal and remand for a new trial. *See United States v. Hightower*, 96 F.3d 211, 215 (7th Cir. 1996); *United States v. Thomas*, 86 F.3d 647, 651 (7th Cir.), *cert. denied*, — U.S. —, 117 S. Ct. 392 (1996). If the record does not contain sufficient evidence under which a properly instructed jury could have convicted Mount of "carrying" the firearm, then double jeopardy principles mandate that we vacate the conviction and remand to the district court with directions to enter a judgment of acquittal on the count in question. *See Hightower*, 96 F.3d at 215; *United States v. Smith*, 82 F.3d 1564, 1567 (10th Cir. 1996); *see also United States v. Robinson*, 96 F.3d 246, 250 (7th Cir. 1996) (after an erroneous "use" instruction, "if none of the evidence presented qualifies as either active-employment 'use' or 'carry,' we will reverse the conviction outright"). Our central inquiry, therefore, becomes whether there is sufficient

evidence in the record for a jury receiving a proper instruction on § 924(c) to convict Mount of carrying a firearm during and in relation to his drug possession offense. *See Smith*, 82 F.3d at 1567.

The evidence in a case is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *United States v. Leonard*, 138 F.3d 906, 910 (11th Cir. 1998).

In *Muscarello v. United States*, — U.S. —, 118 S. Ct. 1911 (1998), the Supreme Court adopted a broad reading of the "carry" requirement so that it would include transporting firearms in glove compartments or in the trunks of cars. Although the opinion does not cover the situation presented by the case at bar, it does provide some guidance as to the meaning of § 924(c)'s "carry" provision. In particular, the Supreme Court's holding ascribes to the word "carry" the ordinary and primary meaning of the word. *Id.* at —, 118 S. Ct. at 1914.

A central and obvious concept inherent in the primary meaning of the word "carry" is that of some degree of physical transportation or movement. *See Muscarello*, — U.S. at —, 118 S. Ct. at 1914 (quoting first definition in Webster's Third New International Dictionary 343 (1986), which is to "move while supporting (as in a vehicle or in one's hands or arms)"); *United States v. Moore*, 76 F.3d 111, 112 (6th Cir. 1996); *see also United States v. Cleveland*, 106 F.3d 1056, 1068 (1st Cir. 1997) (distinguishing feature of "carry" is "the fact that the item is being moved from one place to another by the carrier, either personally or with the aid of some appropriate vehicle"). As a result, in order to convict under the "carry" element of § 924(c), we consistently have held that the government must show some actual transporting of the firearm during and in relation to the offense. *See, e.g., United States v. Quinn*, 123 F.3d 1415 (11th Cir. 1997), *cert. denied*, — U.S. —, 118 S.

7

Ct. 1203 (1998). This requisite physical transportation may occur, for instance, if a defendant carries a gun on his person or in a trunk or locked glove compartment of a car. *See Muscarello*, — U.S. at —, 118 S. Ct. at 1911; *United States v. Sanzhez*, 138 F.3d 1410, 1415 (11th Cir. 1998); *United States v. Chirinos*, 112 F.3d 1089, 1095 (11th Cir. 1997); *United States v. Range*, 94 F.3d 614, 617 (11th Cir. 1996); *United States v. Farris*, 77 F.3d 391, 395 (11th Cir.), *cert. denied*, — U.S. —, 117 S. Ct. 241 (1996).

As we noted above, the Government's contention is that Mount's constructive possession of a firearm that was found in a location near drugs and in a house where drug transactions occurred is sufficient to show that he carried the firearm during and in relation to his drug trafficking activities. We acknowledge that the firearm at issue in this case was not manufactured under the stairs of Mount's house, and that at some point in time it must have been moved into the residence. Indeed, Agent Hersey testified at trial that it was his "understanding" that Mount had purchased the gun from a pawnshop. (R-11 at 1173.) But there is no direct evidence and insufficient circumstantial evidence that Mount was the one who carried the firearm to its resting place in the hidden compartment. For example, the Government does not point to any evidence that Mount was the only person who had access to the compartment. A female companion was in the house with Mount at the time of the search, and arguably she had equal access to it. There is simply no evidence in the record as to how the gun arrived at the location where it was found.[3] Given the state

---

[3] The record does contain testimony that Mount once carried a black snub-nosed gun and drove to see an individual about some money that he was owed. (R-9 at 693-700). Mount, however, was only convicted on Count XVIII, and that count charges that he used and carried a .357 Magnum on the day of the search, November 23, 1993. Since this other testimony refers to a different firearm carried at an earlier time, it is not relevant to the § 924(c) conviction at issue in this case.

8

of the record, a jury would have to rely on speculation to conclude that Mount carried the firearm and placed it in the hidden compartment in order to protect his drug activities.

In support of its argument, the Government cites *United States v. Joseph*, 892 F.2d 118, 126 (D.C. Cir. 1996), *United States v. Santos*, 84 F.3d 43 (2d Cir. 1996), *United States v. Hayden*, 85 F.3d 153 (4th Cir. 1996), *United States v. Pineda-Ortuna*, 952 F.2d 98 (5th Cir. 1992), and other cases that contain language stating that the "carrying" element of § 924(c) requires a showing that the gun be on the defendant or within easy reach. These cases, however, are not persuasive as applied to the facts before us. *Joseph* is easily distinguishable from this case because there it was clear that the gun moved with the drugs and the defendant knew of its movement. *See id.* at 126 (gun was carried in a "tote" bag with drugs borne by a companion of the defendant who stood next to him, and when officers sought to search the bag, the defendant reached into it in what he claimed was an effort to protect his underwear from public exposure). *Santos* and *Pineda-Ortuna* are from the Second and Fifth circuits, and both of those circuits have emphasized that there must be some evidence of movement to sustain a conviction under § 924(c). *See United States v. Wainuskis*, 138 F.3d 183, 187 (5th Cir. 1998) ("It is clear that our jurisprudence in a non-vehicle context requires both that the weapon be *moved in some fashion* and that it be within arm's reach (readily accessible) for a violation of the 'carry' prong of § 924(c)(1).") (emphasis added); *United States v. Canady*, 126 F.3d 352, 357 (2d Cir. 1997) (stating that accessability and proximity are necessary but not sufficient elements of "carrying" conviction, and government must show either that defendant had physical possession of the firearm or that he had moved the firearm from one place to another), *cert. denied*, — U.S. —, 118 S.Ct. 1092 (1998). In fact, it is clear that none of the cases cited by the Government stands for the proposition that the discovery of an unloaded firearm near drugs in a home where

9

drugs were sold is, standing alone, sufficient to support a conviction for "carrying" a firearm under § 924(c).

Furthermore, under facts similar to the case before us, several of our sister circuits have concluded that the evidence to support a "carry" conviction under § 924(c) was insufficient. *See United States v. Sheppard*, 149F.3d 458 (6th Cir. 1998); *United States v. Hall*, 110 F.3d 1155, 1161 (5th Cir. 1997); *United States v. Carraway*, 108 F.3d 745, 754 (7th Cir. 1997); *United States v. Hightower*, 96 F.3d 211, 215 (7th cir. 1996); *Hayden*, 85 F.3d at 162; *United States v. Smith*, 82 F.3d 1564, 1564 (10th Cir. 1996).

If we were to adopt the Government's argument, then the presence of an unloaded firearm in a residence near cocaine, without more, would be sufficient to convict the owner of the gun under § 924(c)'s "carry" prong. Proof of more than mere constructive possession, however, is required to sustain a conviction for "carrying" a firearm in violation of § 924(c). *See United States v. Leonard*, 138 F.3d 906, 910 (11th Cir. 1998); *Canady*, 126 F.3d at 358. A survey of other circuits, for example, reveals that they have sustained "carry" convictions only where there was some evidence suggesting that the defendant had actually *moved* the firearm in relation to his drug offenses. *See, e.g., Velasquez v. United States*, 131 F.3d 766, 767 (8th Cir. 1997) (per curiam) (police searching the defendant's house found a gun on a couch and drugs, and the fact that defendant admitted that he had thrown the firearm on couch when he heard police arriving was sufficient to sustain § 924(c) conviction for "carrying" the firearm); *Canady*, 126 F.3d at 358 (presence of the defendant's fingerprints on gun found under loveseat cushion with pager and cocaine and in close proximity to the defendant was sufficient to provide inference that the defendant had actually carried the gun when he stored it with the cocaine in the loveseat).

10

In conclusion, there is nothing in the record in this case from which a jury could conclude beyond a reasonable doubt that Mount ever moved, supported, or transported the .357 Smith & Wesson during and in relation to his possession of drugs. We hold that the mere fact that Mount's unloaded firearm was found in his residence in close proximity to drugs is an insufficient basis for a fact-finder to conclude beyond a reasonable doubt that he "carried" it to the compartment in violation of § 924(c).[4]

*III. Conclusion*

Mount's convictions on all counts other than Count XVIII are affirmed. Mount's conviction on the § 924(c) charge in Count XVIII is reversed and the district court is directed to enter a judgment of acquittal on this count. In light of this decision, Mount's sentences on all counts are vacated*, see United States v. Watkins*, 147 F.3d 1294, 1296 n.3 (11th Cir. 1998), and this case is remanded for resentencing.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

[4]      Given that we have concluded that the record contains insufficient evidence for a properly instructed jury to convict Mount under the "carry" element of § 924(c), we need not address whether the district court's instruction would have constituted plain error requiring a new trial if the evidence had been sufficient.